IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | CRIMINAL CASE NUMBER: |
| TONY MAURICE GRAVES, : | 1:13-CR-417-WSD-JSA |
| WILDREGO DEANDRE JACKSON, : | |
| CHRISTOPHER JOSEPH ATKINS, : | |
| and DONALD GRESHAM, : | |
| : | |
| Defendants : | |

## **REPORT AND RECOMMENDATION**

Defendants allegedly kidnaped a minor female and held her for ransom for two days in September 2013.  On January 21, 2014, a federal grand jury issued a Second Superseding Indictment ("Indictment") [72], which charges Defendants with violating and conspiring to violate the federal anti-kidnaping statute, Title 18, U.S.C., § 1201, and with brandishing a firearm in connection with that alleged crime of violence in violation of Title 18, U.S.C. § 924(c).

The Indictment [72] does not allege that Defendants transported the victim over state lines.  Rather, Defendants allegedly violated federal law by using "a facility and an instrumentality of interstate and foreign commerce" in furtherance of what otherwise appears to be an intra-state kidnaping.  Defendants now all move to dismiss the Indictment, arguing that the federal anti-kidnaping statute is

unconstitutional on its face and as applied here. [55] [58] [68] [69] [123].

Specifically, Defendants argue that Congress exceeded its authority under the Commerce Clause of the Fifth Amendment, by proscribing intra-state criminal kidnaping merely because it uses cellular communications or other "instrumentalities" of interstate commerce.

For the reasons explained below, the Court **RECOMMENDS** that Defendants' Motions to Dismiss [55] [58] [68] [69] [123] be **DENIED IN PART**, specifically as to Defendants' arguments that the federal anti-kidnaping statute is unconstitutional on its face, which arguments are meritless.  The Court further **RECOMMENDS** that Defendants' Motions to Dismiss [55] [58] [68] [69] [123] be **DEFERRED IN PART** until trial, specifically as to Defendants' arguments that the federal anti-kidnaping statute is unconstitutional as applied to the evidence in this case, which arguments are premature until such evidence is adduced.

## DISCUSSION

### A.  The Anti-Kidnaping Statute Is Constitutional On Its Face

#### 1.  *The Commerce Clause*

Before 2006, the federal anti-kidnaping statute, Title 18, U.S.C. § 1201(a), prohibited the transportation of a kidnaping victim across state lines.  In 2006, the statute was expanded.  The statute now also makes it a federal violation to "seize[], confine[] . . . kidnap[], abduct [] or carr[y] away and hold[] for ransom or reward . .

. any person," when the offender "uses the mail or any means, facility or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense." 18 U.S.C. § 1201(a)(1). The Indictment here alleges such a crime, that is, that the Defendants "aided and abetted by one another, did wilfully and unlawfully seize, confine, kidnap, abduct and carry away A.H.P, a minor, and did hold her for ransom, reward and otherwise, and in committing and in furtherance of that offense, did use a means, facility, and an instrumentality of interstate and foreign commerce." [72] (Counts One and Two).

Defendants first argue that the statue, as amended, is unconstitutional on its face because "bestow[ing] federal jurisdiction over an entirely new class of crimes–intrastate kidnaping–is an invalid exercise of Congress' power to criminalized conduct under the Commerce Clause [and] violates the Tenth Amendment to the United States Constitution." *See, e.g.,* Jackson's Motion to Dismiss [58] at 1. To succeed, Defendants must show that "no set of circumstances exists under which the Act would be valid, i.e., that the law is unconstitutional in all of its applications." *United States v. Martinez*, 736 F.3d 981, 991 (11th Cir. 2013) (internal citations and quotations omitted). Defendants cannot make this showing.

Unlike the statutes at issue in the majority of Commerce Clause jurisprudence, the anti-kidnaping statute contains express jurisdictional language.

As noted above, the statute only purports to reach intrastate kidnapings where the offender uses the mails or "any means, facility or instrumentality" of interstate commerce. 18 U.S.C. § 1201(a)(1). According to the cases cited by the parties and those revealed in the undersigned's own research, no court has found this statute to be unconstitutional and several district courts around the country have upheld it. *See United States v. Ramos*, No. 12 CR 556 (LTS), 2013 WL 1932110 (S.D.N.Y. May 8, 2013); *United States v. Taylor*, No. 12 CR 56, 2012 WL 3522528 (S.D. Ala. Aug. 14, 2012); *United States v. Jacques*, No. 2:08 CR 117, 2011 WL 1706765 (D. Vt. May 4, 2011); *United States v. Augustin*, No. 1:09 CR 187, 2010 WL 2639966 (E.D. Tenn. June 28, 2010); *United States v. Ochoa*, No. 08 CR 1980-WJ, 2009 WL 3878520 (D.N.M. Nov. 12, 2009).

Defendants cite the Supreme Court's seminal decision in *United States v. Lopez*, 514 U.S. 549 (1995), which found the Gun-Free School Zones Act of 1990 to exceed Congress' Commerce Clause authority. Key to the Supreme Court's decision was the finding that "[t]he Act neither regulates a commercial activity nor contains a requirement that the possession [of firearms] be connected in any way to interstate commerce." *Id.* at 551. The Court identified three broad categories of activity that Congress could regulate under the Commerce Clause: (1) the use of the channels of interstate commerce, that is, the interstate transportation routes

through which persons and goods move[1]; (2) the use of the instrumentalities of interstate commerce, that is, the people and things moving in commerce[2], and (3) other activities found by Congress to have a "substantial relation" to interstate commerce. *Id.* at 558-559.

Unlike here, however, the statute at issue in *Lopez* did not limit itself to conduct where the offender used channels or instrumentalities of interstate commerce. In that context, the Supreme Court analyzed whether Congress had adduced sufficient findings to justify application of the third, "substantial relation" prong. The Court found the answer in the negative and thereby invalidated the Gun-Free Schools Zones Act. *See Id.* at 560-565.

The other Supreme Court cases Plaintiffs principally rely upon, *United States v. Morrison*, 529 U.S. 598 (2000) and *United States v. Jones*, 529 U.S. 848 (2000), also do not address regulation of channels or instrumentalities of interstate commerce. *Morrison* concerns the constitutionality of the Violence Against Women Act, which Congress had also premised on the third *Lopez* category, that is, a purported substantial relation between the proscribed conduct and interstate

---

[1] This includes highways, railroads, navigable waters, airspace, telecommunications networks and national securities markets. *See United States v. Ballinger*, 395 F.3d 1218, 1225-1226 (11th Cir. 2005).

[2] This includes cars, airplanes, boats, shipments of goods, telephones, and mobile/cellular telephones. *See Ballinger*, 395 F.3d at 1226.

commerce.  *Id.* at 609-613.   As with *Lopez*, the Court found that Congress' findings were insufficient to justify exercise of the Commerce Clause power on this basis to conduct that otherwise lacked any connection to interstate commerce.  *Jones* concerns the federal arson statute, which proscribed arson against property "used in . . . any activity affecting interstate . . . commerce."  18 U.S.C. § 844(i).  The Court did not invalidate this statute, but simply found that it could not apply to arson of a residence not used for commercial purposes.  *See Jones*, 529 U.S. at 859.  Just like *Lopez*, neither of these cases purport to restrict Congress' ability to regulate the use of channels and instrumentalities of interstate commerce.

  Much more applicable are the many precedents upholding "Congress' well-established power to regulate the channels and instrumentalities of interstate commerce in order to prevent their use for harmful purposes."  *Ballinger*, 395 F.3d at 1222.  The Eleventh Circuit has recognized, with approval, that "Congress has repeatedly used this power to reach criminal conduct in which the illegal acts ultimately occur intrastate, when the perpetrator uses the channels or instrumentalities of interstate commerce to facilitate their commission."  *Id.* at 1226; *see also United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ("Congress clearly has the power to regulate the internet, as it does other instrumentalities and channels of interstate commerce, and to prohibit its use for harmful or immoral purposes regardless of whether those purposes would have a

primarily intrastate impact."). Indeed, the "Commerce Clause is plenary." *Id.*

Thus, the Eleventh Circuit has upheld the application of 18 U.S.C. § 2422(b), which prohibits the inducement, enticement or coercion of a minor to engage in prostitution or other illegal sexual activity, so long as the offender uses "the mail or any facility or means of interstate or foreign commerce." *See Hornaday*, 392 F.3d at 1309-1311; *see also United States v. Evans*, 476 F.3d 1176, 1181 (11th Cir. 2007) (holding that defendant's use of telephones and cell phones alone, even without evidence that the calls were routed through an interstate system, was sufficient to satisfy 18 U.S.C. § 2422(b)'s jurisdictional element).

The Eleventh Circuit has similarly upheld the application of the federal murder-for-hire statute, 18 U.S.C. § 1958(a), which makes it a federal violation "to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed. . . ." According to the Court of Appeals, this express jurisdictional provision establishes federal jurisdiction "whenever any 'facility of interstate commerce' is used in the commission of a murder-for-hire offense, regardless of whether the use is interstate in nature (i.e., the telephone call was between states) or purely intrastate in nature (i.e., the telephone call was made to another telephone call within the same state)." *United States v. Drury*, 396 F.3d

1303, 1311 (11th Cir. 2005).[3]

These precedents more than support the facial constitutionality of the nearly identical jurisdictional language in the anti-kidnaping statute.

### 2. *The Tenth Amendment And Necessary And Proper Clause*

Defendants also invoke the Tenth Amendment, which provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const., amend. X. Defendants argue that the anti-kidnaping statute, as amended, purports to federalize a category of violent criminal conduct ordinarily handled by the states, in a way that will "usurp[]" the states' abilities to regulate kidnaping. Jackson Motion [58] at 3, 25.

It is not clear whether Defendants intend this argument to be a separate one from their Commerce Clause argument. It does not appear to be. As stated by the

---

[3] *Drury* ultimately did not reach the question of whether, as a matter of statutory construction, the murder-for-hire statute required the government to show some interstate nexus to a telephone call, because it was undisputed in that case that even intrastate calls resulted in signals being routed across state lines. *Id.* at 1310-1312. This issue was treated as a matter of statutory construction because, before 2004, the statute referred to a "facility in interstate commerce." *Id.* This phrase was interpreted by some courts as being more restrictive than a "facility *of* interstate commerce." *Id.* The murder-for-hire statute was amended in 2004 to include the broader phrase "facility of," and the federal anti-kidnaping statute at issue here uses that broader phrase as well. *Id.* The Court of Appeals has since stated, in at least one nonpublished case, that the murder-for-hire statute applies to purely intrastate communications. *See United States v. Capshaw*, 440 Fed. App'x. 738, 742 (11th Cir. 2011).

Supreme Court, the Tenth Amendment "is essentially a tautology" requiring courts to determine "whether an incident of state sovereignty is protected by a limitation on Article I power." *New York v. United States*, 505 U.S. 144, 156–157 (1992). Thus, Defendants' challenges under the Commerce Clause and the 10th Amendment "are essentially mirror images of each other: if the authority to act has been delegated by the Constitution to Congress, then it may act pursuant to Article I; if not, the power has been reserved to the states by the Tenth Amendment." *Kansas v. United States*, 214 F.3d 1196, 1198 (10th Cir. 2000). Thus, for all the same reasons discussed above, because the Commerce Clause authorized Congress to enact the anti-kidnaping statute, it is not unconstitutional under the 10th Amendment either.

Also unavailing is Defendants' reliance on the Necessary and Proper Clause. That Clause provides:

> [T]he Congress shall have Power ... To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof.

U.S. Const., art. I, § 8, cl. 18.

Defendants cite no precedent for the proposition that this clause limits Congress' ability to regulate criminal conduct utilizing the channels and instrumentalities of interstate commerce. Defendants' principal citation is to

Justice Thomas' dissent in *United States v. Comstock*, 560 U.S. 126 (2010).  But the majority opinion in that case made clear just how modest the Necessary and Proper Clause analysis is:

> We have since [after Chief Justice Marshall's 1819 opinion in *McCulloch v. Maryland*, 4 Wheat. 316, 4 L.Ed. 579 (1819)], made clear that, in determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power

*Id.* at 134.

In *Gonzales v. Raich*, 545 U.S. 1 (2005), the Supreme Court upheld criminal prosecution of federal narcotics violations under the Necessary and Proper Clause, where the statute was enacted based on the interstate impact of intrastate drug activity. The Court stated that the Necessary and Proper Clause analysis is "a modest one," limited to confirming that a "rational basis" exists for the passage of the statute as a way of regulating indirect impacts on interstate commerce.  *Id.* at 22.

Notably, Justice Scalia, the author of *Lopez*, stated in his concurrence in *Gonzales* that it is "self-evident" that the federal government may properly regulate the channels and instrumentalities of interstate commerce, "since they are the ingredients of interstate commerce itself."  *Id.* Justice Scalia distinguished between such regulations directed specifically to the channels and instrumentalities of

interstate commerce, which plainly pass muster under the Necessary And Proper Clause, and those statutes, such as that at issue in *Lopez*, that are not so limited and require more analysis. *Id.* (citing, *inter alia*, *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 584-585 (1985) (O'CONNOR, J., dissenting) (explaining that it is through the Necessary and Proper Clause that "an intrastate activity 'affecting' interstate commerce can be reached through the commerce power")).

Here, as discussed above, the anti-kidnaping statute expressly regulates the use of actual instrumentalities of interstate commerce. This plainly falls under Congress' authority under the Necessary and Proper Clause.[4]

### B. Whether the Anti-Kidnaping Statute Is Unconstitutional As

---

[4] Defendants criticize the completeness of Congress' findings in amending the anti-kidnaping statute in 2006. *See* Jackson Motion [58] at 22-25. This statute was amended as part of the passage of the Sex Offender Registration and Notification Act, and accordingly Congress' findings are limited to the need to protect children from sexual abuse and pornographers. Defendants argue that expanding the federal proscription against general kidnaping does not fit this purpose.

But the Supreme Court has stated that "[w]hile congressional findings are certainly helpful in reviewing the substance of a congressional statutory scheme, particularly when the connection to commerce is not self-evident, and while we will consider congressional findings in our analysis when they are available, the absence of particularized findings does not call into question Congress' authority to legislate." *Gonzalez*, 545 U.S. at 21. Here, it may be that Congress did not see fit to specifically discuss findings with regard to the anti-kidnaping statute, where the amendment was so plainly within its commerce clause power to regulate the instrumentalities of interstate commerce. Nothing about this legislative history undermines the constitutionality of the statute.

**Applied Here Is Premature**

Defendants argue that even if the statute is not unconstitutional in its entirety, it cannot be applied here. Although the Indictment does not state what instrumentality of interstate commerce was used, Defendants predict that the government will base the prosecution on purely intrastate cellular telephone calls.[5] Defendants argue that these intrastate calls cannot qualify as an "instrumentality" of interstate commerce.

The Court notes that the Eleventh Circuit and other courts, in the context of other statutes, have consistently held that "[t]he telephone system is clearly a facility of interstate . . . commerce, and answering a telephone and conversing on it constitutes use of a facility of interstate commerce." *United States v. Covington*, 565 F.3d 1336, 1343 (11th Cir. 2009) (internal quotations omitted). Indeed, the Eleventh Circuit has stated that even intrastate use of telephone or internet lines is sufficient to show use of a facility or instrumentality of interstate commerce. *See United States v. Faris*, 583 F.3d 756, 759 (11th Cir. 2009) (In upholding the constitutionality of the federal anti-child pornography laws, stating that "[e]ven if

---

[5] This guess appears to be an educated one, as the affidavit supporting the issuance of the Criminal Complaint against Defendant Jackson on September 19, 2013 details at least one cellular telephone number that was used to communicate ransom demands. Complaint [1] at 2. Nevertheless, the Government at trial would not necessarily be bound to this particular set of communications as the sole basis for federal jurisdiction.

none of Faris' communications were routed over state lines, the internet and the telephone he used to contact the undercover officer were still 'instrumentalities of interstate commerce.'"), (*superseded by statute on other grounds* as recognized by *United States v. Jerchower*, 631 F.3d 1181 (2011)); *Evans*, 476 F.3d at 1180-1181 (Defendant's use of telephones and cell phones alone, even without evidence that the calls were routed through an interstate system, was sufficient to satisfy use of an instrumentality of interstate commerce in violation of federal anti-child pornography laws).

Ultimately, however, Defendants' "as applied" argument cannot be resolved at this stage of the case.  It essentially asks for summary judgment, that is, a ruling that the anticipated evidence in the case will be insufficient to prove a required element of the offense.  First, this argument is speculative, because Defendants' prediction as to what the trial evidence would show is just that.  The Government may rely on intrastate cellular phones or other communications, or entirely different alleged uses of instrumentalities of interstate commerce to satisfy the jurisdictional element of the statute.  Moreover, even if the Government seeks to rely only on calls to and from recipients within Georgia, it is still possible that the Government would adduce evidence that the calls were routed by the provider across state lines in some way.

Second, regardless, "[t]here is no summary judgment procedure in criminal

cases.  Nor do the rules provide for a pre-trial determination of sufficiency of the evidence." *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (internal quotes omitted). Instead, "[a] motion for acquittal under Rule 29 is the proper avenue for contesting the sufficiency of the evidence in criminal cases . . . ." *Id.* Because Defendants were properly indicted, the Government is entitled to presents its evidence at trial and Defendants are entitled to challenge the sufficiency of that evidence to establish the jurisdictional element through a motion for acquittal after close of the Government's case-in-chief.  Resolving this issue before full resolution of the facts is simply not proper.

## CONCLUSION

Thus, for the reasons explained above, the Court **RECOMMENDS** that Defendants' Motions to Dismiss [55] [58] [68] [69] [123] be **DENIED IN PART**, specifically as to Defendants' arguments that the federal anti-kidnaping statute is unconstitutional on its face.  The Court **RECOMMENDS** that Defendants' Motions to Dismiss [55] [58] [68] [69] [123] be **DEFERRED IN PART** until trial, specifically as to Defendants' arguments that the federal anti-kidnaping statute is unconstitutional as applied to the evidence in this case.

**IT IS SO ORDERED** this 4th day of April, 2014

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE