IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TONY MAURICE GRAVES,<br>WILDREGO DEANDRE<br>JACKSON, CHRISTOPHER<br>JOSEPH ATKINS, and DONALD<br>GRESHAM,<br><br>             Defendants. | 1:13-cr-417-WSD-JSA |

## OPINION AND ORDER

This matter is before the Court on Tony Graves's ("Graves") and Donald Gresham's ("Gresham") Objections [141, 142] to Magistrate Judge Justin S. Anand's April 4, 2014, Report and Recommendation [136] ("R&R"). The R&R recommends that Graves's motion to dismiss [55] and Wildrego Jackson's ("Jackson") Motion to Dismiss the First Superseding Indictment [58] (the "Motion to Dismiss"), which Graves, Gresham and Christopher Atkins ("Atkins") (collectively with Jackson, "Defendants") also have adopted [60, 69, 113, 122], be denied. Defendants generally contend that Congress exceeded its authority in enacting the federal anti-kidnapping statute, 18 U.S.C. § 1201(a), and thus the anti-kidnapping counts (Counts One and Two) are facially unconstitutional or

unconstitutional as applied and should be dismissed, and because the firearms count (Count Three) is predicated on the kidnapping charge, it too should be dismissed.

## I.   BACKGROUND

The facts relevant to Defendants' Motion to Dismiss are straightforward. The Government alleges that, on September 17, 2013, at least two of the Defendants, both armed with handguns, entered a home at which the victim, A.H.P., resided with her mother and brother. After they entered, they found the victim, her mother and her brother hiding, and they demanded money from the victim's mother. When she refused, they grabbed A.H.P. and took her to a waiting car. Later that day, Defendants several times used their cell phones to call the victim's family. During these calls, Defendants demanded money and drugs as a condition of A.H.P.'s release. (Second Superseding Indictment [72] at 2-3).

On October 16, 2013, Defendants Graves and Jackson were charged, in the original indictment, with (i) conspiracy to kidnap A.H.P., a minor, and hold her for ransom, in violation of 18 U.S.C. § 1201(a)(1) (Count One); (ii) kidnapping A.H.P., a minor, and holding her for ransom, in violation of 18 U.S.C. §§ 1201(a)(1), 1201(g)(1) and 2 (Count Two); and (iii) knowingly using, carrying, brandishing and discharging a firearm during or in relation to the crime of kidnapping charged in the indictment, in violation of 18 U.S.C. §§ 924(c)(1)(A)

and 2 (Count Three).  On November 19, 2013, a First Superseding Indictment was returned alleging the same charges but adding Atkins as a defendant.

On December 27, 2013, Graves moved to dismiss the indictment.  On December 30, 2013, Jackson filed his Motion to Dismiss [58].  Both motions argue that the indictment should be dismissed on the grounds that the anti-kidnapping statute is facially unconstitutional because Congress exceeded its authority in enacting it and that it also is unconstitutional as applied.

On January 21, 2014, a Second Superseding Indictment was returned adding Gresham as a defendant in the action.

Graves, Gresham and Atkins each adopted Jackson's Motion to Dismiss. (See [60, 69, 113, 122]).[1]  Defendants and the Magistrate Judge considered the Motion to Dismiss as one motion seeking dismissal of all of the counts alleged in the Second Superseding Indictment.[2]

In his R&R, the Magistrate Judge determined that the anti-kidnapping statute is constitutional on its face, and, because it properly alleges a sufficient interstate commerce connection under the Commerce Clause, he recommended that the

---

[1] Because Graves adopted Jackson's Motion to Dismiss, Graves's December 27, 2013, motion is moot.
[2] There is an Original [12], First Superseding [31] and Second Superseding Indictment [72] in this case.  The indictments allege the same two kidnapping counts and the same firearms count.  The Court considered the Motion to Dismiss to seek dismissal of all three counts of the indictment against all four Defendants.

Motion to Dismiss be denied. The Magistrate Judge determined also that Defendants' as-applied argument was premature and recommended that the Court consider this basis for dismissal after evidence has been presented at trial.

On April 8 and 18, 2014, respectively, Graves and Gresham filed their Objections to R&R. The Objections, each a little more than a page, state broad, general disagreements with the Magistrate Judge's findings and recommendations regarding the constitutionality of the anti-kidnapping statute.[3]

## II.    STANDARD OF REVIEW

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; <u>Williams v. Wainwright</u>, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." <u>Jeffrey S. v. State Bd. of Educ. of Ga.</u>, 896 F.2d 507, 512 (11th Cir. 1990) (internal citations omitted). With respect to those findings and recommendations

---

[3] On May 16, 2014, Atkins pled guilty to a criminal information, and the Motion to Dismiss is moot as to him. See <u>United States v. Atkins</u>, 1:14-cr-181.

to which a party has not asserted objections, the Court must conduct a plain error review of the record. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983). Because there are objections to the R&R, the Court reviews *de novo* the findings and recommendations in the R&R.[4]

## III. DISCUSSION

Defendants object to the following findings in the R&R:

1. That the federal anti-kidnapping statute, 18 U.S.C. § 1201(a), is not facially unconstitutional because its passage was a valid exercise of Congressional authority under the Commerce Clause and it contains express jurisdictional language. (Graves Objs. [141] at 1; Gresham Objs. [142] at 1).

2. The federal anti-kidnapping statute is not facially unconstitutional because it does not violate the Tenth Amendment reservation of authority to the states. (Graves Objs. at 2; Gresham Objs. at 2).

3. The federal anti-kidnapping statute is not facially unconstitutional because it expressly regulates the use of instrumentalities of interstate commerce as authorized under the Necessary and Proper clause. (Graves Objs. at 2; Gresham Objs. at 2).

---

[4] The Court conducts a *de novo* review even though the generalized Objections could be considered improper. See Slay, 714 F.2d at 1095 (citing Nettles v. Wainwright, 677 F.2d 404, 410 & n.8 (5th Cir. 1982)).

The Court considers these objections in turn.

A.   Legal Standard on Review of a Facial Challenges

A facial challenge to a statute on the grounds that it is unconstitutional requires the challenging party to establish that "no set of circumstances exists under which the Act would be valid" meaning that the challenging party must show "that the law is unconstitutional in all of its applications." United States v. Martinez, 736 F.3d 981, 991 (11th Cir. 2013).  In reviewing a facial challenge, a court must presume the challenged statute constitutional and may invalidate legislation "only upon a plain showing that Congress has exceeded its constitutional bounds." United States v. Morrison, 529 U.S. 598, 607 (2000).  It also must consider the various constructions of the statute and, if the statute can be construed to avoid constitutional questions, it must do so. United States ex rel. Attorney General v. Delaware & Hudson Co., 213 U.S. 366, 408 (1909).  The Court applies these principles to Defendants' facial challenges to the anti-kidnapping statute.

B.  Analysis

1.  Commerce Clause Authority and Tenth Amendment[5]

The anti-kidnapping statute makes it a federal violation to "seize, confine[] . . . , kidnap[], abduct[] or carr[y] away and hold[] for ransom or reward . . . any person" when an individual "uses the mail or any means, facility or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense." 18 U.S.C. § 1201(a)(1). The Second Superseding Indictment alleges that Defendants "did willfully and unlawfully seize, confine, kidnap, abduct and carry away A.H.P., a minor, and hold her for ransom, reward and otherwise, and in committing and in furtherance of that offense, did use a means, facility, and instrumentality of interstate or foreign commerce." [72 at 1-3]. Defendants claim that the statute criminalizes wholly intrastate conduct and thus is not a proper Congressional exercise of authority under the Commerce Clause and otherwise violates power reserved to the states by the Tenth Amendment.

---

[5] The Court considers these arguments together since Defendants claim that, because Congress did not have Commerce Clause authority to enact Section 1201(a), the crime of kidnapping is reserved under the Tenth Amendment to prosecution by the State of Georgia. If Congress was authorized to regulate this conduct pursuant to its powers under the Commerce Clause, the Tenth Amendment necessarily does not provide a separate ground for a facial challenge.

It is well-established that Congress may regulate three broad categories of activity under the Commerce Clause: (1) the use of channels of interstate commerce, specifically interstate transportation routes through which goods and people move; (2) use of the instrumentalities of interstate commerce, specifically, the people and things moving in interstate commerce, and; (3) other activities found by Congress to have a "substantial relation" to interstate commerce.  United States v. Lopez, 514 U.S. 549 (1995).

Although Congress's authority to regulate the channels and instrumentalities of interstate commerce is not unlimited, it has been long recognized that Congress may exercise its powers to regulate interstate commerce channels and instrumentalities even if the conduct regulated has a substantial intrastate character.  This is particularly true where traditional instrumentalities and channels are involved.  In United States v. Ballinger, 395 F.3d 1218 (11th Cir. 2005), the court considered the conduct of a defendant who destroyed by arson a property of a religious character, specifically churches, in violation of 18 U.S.C. § 247.  The defendant challenged his prosecution for the arsons, claiming that Section 247 was unconstitutional because Congress did not have authority under the Commerce Clause to regulate conduct consisting of the burning of church structures.  That conduct, the defendant argued, was intrastate in nature and did not have a sufficient

connection to interstate commerce for Congress to regulate it. The court found that the defendant's use of intrastate highways to travel from one town to another, across state lines, provided the necessary constitutional authority for Congress to enact Section 247. The court found that "[c]hannels of commerce are 'the interstate transportation routes through which persons and goods move,'" noting that channels of commerce also include "telecommunications networks." Id. at 1225-26 (quoting Morrison, 529 U.S. at 613, citing Gibbs v. Babbitt, 214 F.3d 483, 490-91 (11th Cir. 2000)). The Ballinger court held specifically that "pagers, telephones, and mobile phones" are instrumentalities of interstate commerce. Id. at 1226. The court concluded that use of interstate routes was sufficient to support that Congress was authorized to regulate them, and, thus, Section 247 was constitutional. The court noted: "Congressional power to regulate the channels and instrumentalities of commerce includes the power to prohibit their use for harmful purposes, even if the targeted harm itself occurs outside the flow of commerce and is purely local in nature." Id.

The Eleventh Circuit has recognized the authority of Congress under the Commerce Clause to deem conduct criminal through exercise of its power to regulate channels and instrumentalities of commerce. Id. at 1229 (citing, as examples, 18 U.S.C. § 43, engaging in animal enterprise terrorism; 18 U.S.C.

§ 228, avoiding payment of child support; 18 U.S.C. § 1958, committing murder for hire; 18 U.S.C. § 2101, causing a riot).  The exercise of Commerce Clause authority is uniformly upheld where the statute challenged has "unambiguous jurisdictional language" expressing the nexus between the crime proscribed and interstate commerce.  Id.; see also United States v. Jordan, 635 F.3d 1181, 1189 (11th Cir. 2011); United States v. McAllister, 77 F.3d 387, 390 (11th Cir. 1996).  In McAllister, the Eleventh Circuit held constitutional 18 U.S.C. § 922(g)(1), which prohibits possession of a firearm by a convicted felon, because the statute specifically required that the possession be "in or affecting commerce," finding further that this jurisdictional underpinning defeated a "facial challenge to the constitutionality" of the statute.  McAllister, 77 F.3d at 390.  See also United States v. Hornaday, 393 F.3d 1306 (11th Cir. 2002) (18 U.S.C. § 2422(b), prohibiting use of the internet to arrange for sex with children, constitutional including because the offense must be committed using "the mail or any facility or means of interstate or foreign commerce."); United States v. Drury, 396 F.3d 1303 (11th Cir. 2005) (18 U.S.C. § 1958 "establishes federal jurisdiction whenever any 'facility of interstate commerce' is used in the commission of a murder-for-hire offense, regardless of whether the use is interstate in nature (i.e. the telephone call was between states) . . . or purely intrastate in nature (i.e. the telephone call was made to another

telephone within the same state).").

The anti-kidnapping statute contains an unambiguous jurisdictional element. Section 1201(a) specifically requires as a predicate to conviction proof that the defendant who "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts or carries away and holds for ransom or reward" a victim, must "travel[] in interstate commerce or *use[] the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense.*"[6]  18 U.S.C. § 1201(a) (emphasis added).

The anti-kidnapping statute at issue here was, when passed, firmly founded on the authority granted to Congress by the Commerce Clause, specifically the authority of Congress to regulate (1) the use of channels of interstate commerce, specifically interstate transportation routes through which goods and people move, and (2) the use of the instrumentalities of interstate commerce.  This exercise of Commerce Clause power is expressed in the plain language of Section 1201(a).[7] Defendants have not shown that Congress exceeded its constitutional bounds in

---

[6] Here, Defendants are alleged to have abducted and taken away A.H.P., and made a series of telephone calls to her family demanding money and drugs for her return.
[7] Defendants rely on Morrison, 529 U.S. 598, United States v. Jones, 529 U.S. 848 (2000) and Lopez, 514 U.S. 549, in support of their facial attack.  These cases were considered by the Magistrate Judge in his R&R.  The Magistrate Judge's discussion of these authorities is well-reasoned and the Court agrees with the Magistrate Judge's distinguishing of these authorities.

11

enacting Section 1201(a) and their objection on this basis is overruled.[8]

    2.    <u>Necessary and Proper Clause</u>

Defendants next assert a constitutional challenge to Section 1202(a) on the ground that Congress did not have authority to enact Section 1201(a) under the Necessary and Proper clause. The Court already has found that the Commerce Clause provided authority to enact Section 1201(a) and it is not necessary to address Defendants' Necessary and Proper Clause argument.

Having conducted its *de novo* review and for the reasons stated above, the Court overrules the Objections based on Defendants' facial challenge to the constitutionality of Section 1201(a).

    C.    <u>As-applied Challenge</u>

Defendants also seek dismissal of the indictment based on the unconstitutionality of Section 1201(a), as applied to Defendants. Defendants claim that the telephone calls the Government alleges occurred in connection with the kidnapping and abduction were all "intrastate" in nature. The Magistrate Judge determined that, absent evidence of the nature of the calls, it was premature to consider Defendants' "as-applied" arguments and that the motion should be

---

[8] The Court notes that defendants in other federal district courts across the country have asserted the same facial challenge to Section 1201(a) that Defendants assert here and that each of these courts has rejected the attack for the same reasons stated in this Order. (<u>See</u> R&R at 4 (collecting cases)).

considered after the presentation of evidence at trial. If Defendants contend that the evidence as presented at trial does not support the interstate commerce element of the offense, Defendants can file a motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure. See United States v. Salmon, 378 F.3d 1266, 1268 (11th Cir. 2004). Defendants did not object to this finding and recommendation and, finding no plain error, the Court adopts the recommendation.

## IV.   CONCLUSION

Accordingly, and for the reasons stated above,

**IT IS HEREBY ORDERED** that the Court **ADOPTS** Magistrate Judge Justin S. Anand's April 4, 2014, Report and Recommendation [137] and Defendants Graves's and Gresham's Objections [141, 142] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendants' Motions to Dismiss [55, 58, 68, 69, 123] are **DENIED** but without prejudice to Defendants Graves, Jackson and Gresham to move after the evidence is presented at trial for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.

**SO ORDERED** this 9th day of June, 2014.

_William S. Duffey_
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE