## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| TONY MAURICE GRAVES, | : | MOTION TO VACATE |
| Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL NO. |
| | : | 1:13-CR-417-WSD-JSA-1 |
| UNITED STATES OF | : | |
| AMERICA, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:16-CV-2135-WSD-JSA |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Movant Tony Maurice Graves has filed the instant motion to vacate pursuant to 28 U.S.C. § 2255. (Doc. 272). Movant seeks to challenge the constitutionality of his sentence, which was imposed on December 17, 2014, following his guilty plea in the Northern District of Georgia.

## I.   Procedural History

On June 17, 2014, a federal grand jury in the Northern District of Georgia charged Movant and two co-defendants in a third superceding indictment with conspiracy to commit kidnapping of a minor in violation of 18 U.S.C. § 1201(a)(1); kidnapping of a minor in violation of 18 U.S.C. §§ 1201(a)(1), 1201(g)(1) and Section 2; brandishing and discharging a firearm, in violation of 18 U.S.C. § 924(c)(1)(A) and Section 2; and conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a). (Doc. 166). On September 30, 2014,

Movant entered a guilty plea pursuant to a plea agreement to conspiracy to commit Hobbs Act robbery.  [Doc. 223 & Attach. 1].  The negotiated plea agreement contains a waiver of Movant's appellate and collateral rights.  (Doc. 223, Attach. 1 at 9-10 ¶ 23).  On December 17, 2014, U.S. District Court Judge William S. Duffey, Jr. sentenced Movant to 228 months of imprisonment to be followed by three years of supervised release. (Docs. 239, 240).  The Eleventh Circuit affirmed Movant's conviction and sentence on July 16, 2015.  (Doc. 256).

Movant filed the instant § 2255 motion to vacate his sentence on June 15, 2016.  (Doc. 272).[1]  Herein, Movant raises three claims:  (1) his conviction for conspiracy to commit Hobbs Act robbery under 18 U.S.C. § 1951(a) no longer qualifies as a crime of violence in light of the Supreme Court's recent decision in *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2557 (June 26, 2015)[2] and his

---

[1] Under the mailbox rule, motions are considered filed at the time they are delivered to prison authorities (*i.e.,* signed) for forwarding to the courts. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding appeal was filed at the time the petitioner delivered it to prison authorities); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (extending the mailbox rule to § 2255 motions).

[2] In *Johnson*, the Supreme Court invalidated the residual clause in 18 U.S.C. § 924(e)(2) of the Armed Career Criminal Act ("ACCA") as unconstitutionally vague. The ACCA provides that if a person who is convicted under 18 U.S.C. § 922(g) has three or more previous convictions for a "serious drug offense" or a "violent felony," his prison term is increased from up to ten years of imprisonment (set forth in

conviction should be dismissed as unconstitutionally vague; (2) sentencing and appellate counsel were ineffective for failing to argue that the Court used the wrong standard (*i.e.*, preponderance of the evidence) during the sentencing hearing; and (3) sentencing and appellate counsel were ineffective for failing to raise the argument that some of Movant's prior convictions were imposed on the same day and should not have been treated as separate convictions in calculating his criminal history category because they were consolidated. (Doc. 272 & Attach. 1). The Government argues that the Court should deny the § 2255 motion because: (1) Movant's arguments that the crime of violence definition in the § 4B1.1 of the United States Sentencing Guidelines ("U.S.S.G.") (the career offender enhancement) is unconstitutionally vague after *Johnson* is irrelevant since U.S.S.G. § 4B1.1 was not applied to Movant's sentence; and (2) both of Movant's ineffective assistance of counsel claims are without merit. (Doc. 283). Movant has not filed a reply.

---

§ 924(a)(2)) to a minimum of fifteen years and a maximum of life. *See* 18 U.S.C. § 924(e)(1). The statute defines a "violent felony" as "burglary, arson, or extortion, or involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). It is the words at the end of the definition, italicized previously, that are known as the ACCA's residual clause, *Johnson*, 135 S. Ct. at 2555-56, and which the Supreme Court found unconstitutionally vague. *Id.* at 2557, 2563.

II.   <u>Standard of Review</u>

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990). Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (internal quotation marks and citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

4

This Court may deny § 2255 relief without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; *see Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989).  As discussed below, Movant's § 2255 motion and the record in this case conclusively show that he is not entitled to relief in connection with his claims.  Thus, no evidentiary hearing is required.

III.   Analysis

    A.   Movant's Plea Was Knowing And Voluntary.

Although the appellate waiver in Movant's plea agreement precludes both direct and collateral review of both his sentences and convictions, an appellate waiver does not bar claims for ineffective assistance of counsel relating to the plea agreement or waiver, or claims challenging the voluntariness of the plea.  *Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007); *Williams v. United States*, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005).  Thus, to the degree that Movant implicitly argues that his plea was unknowing or involuntary, the undersigned must review this claim.  It is well settled that there is a strong presumption that statements made during the plea colloquy are true.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption

of verity."); *United States v. Anderson*, 384 F. App'x 863, 865 (11th Cir. 2010) ("There is a strong presumption that statements made during a plea colloquy are true."); *accord, United States v. Munguia-Ramirez*, 267 F. App'x 894, 897 (11th Cir. 2008); *Patel*, 252 F. App'x at 974. Where, as here, any claim by Movant that his plea was involuntary and/or that he received ineffective assistance of counsel is in direct conflict with his statements under oath, he has a strong burden to show that his statements under oath were false. *Patel*, 252 F. App'x at 974-75. Movant has not met this burden.

At the beginning of the plea hearing, Judge Duffey asked Movant to let the Court know if he did not understand anything asked of him, to which Movant agreed. (Doc. 230 at 9). Judge Duffey then told Movant the rights Movant would be giving up if he entered into a plea, all of which Movant indicated he understood. (*Id.* at 9-18). Thereafter, the Government described the terms of the plea agreement, with which Movant also agreed. (Doc. 230 at 18-20). Movant swore that: nobody forced or coerced him to plead guilty; no one promised him anything other than what was contained in the written plea agreement; no one advised him not to tell the complete truth in court; he had sufficient time to think about it and discuss the matter fully with his attorney; and he was satisfied with his attorney's

representation. (Doc. 230 at 20-24). Additionally, Movant's sworn statements indicate that Movant understood that the maximum sentence he faced was up to twenty years of imprisonment with no mandatory minimum, and that the Court has the authority to impose the maximum statutory sentence and/or a more severe sentence than the calculated guideline range. (*Id.* at 26-27, 29-33). The Court also specifically questioned Movant about the appellate waiver contained in the plea agreement, and Movant swore that he understood that he gave up his appellate and collateral rights unless the sentence is greater than the guideline recommends or if the Government decided to appeal. (*Id.* at 33-35).

Judge Duffey next asked the Government to summarize the facts of the case, and told Movant to "listen carefully to what [the Assistant U.S. Attorney ("AUSA")] says, because when she's done, I'm going to ask you if you admit that you engaged in the conduct that she described, and then I will ask if you are guilty of the crime charged in Count Four." (Doc. 230 at 38-39). The Government then summarized the facts as follows:

> Your Honor, if this case were to go to trial, the government believes that it could prove that on September 17th, 2013, at approximately 2:15 a.m., three men, the defendant, Tony Graves, and his co-defendants, Wildrego Jackson and Christopher Atkins, broke into a home located in Ellenwood, Georgia. I'm sorry, Wildrego Jackson

stayed in his car, and Donald Gresham went to break into the house with Graves and Atkins.

The purpose of the break-in, as agreed by all the co-defendants, was to forcibly take drug proceeds and/or drugs from the people living in or spending the night in the house.

Two of the men were armed with handguns. Our evidence would show that Defendant Graves was armed and that Donald Gresham was armed, and those two went upstairs and encountered the mother, Maria Coral, who lived in the house, and her two minor children, a 16-year-old son and a 14-year-old daughter, hiding in the master bedroom closet. The daughter was holding the family dog in her arms.

The robbers demanded money from Maria Coral, the mother. And during the encounter when the mother continuously said that she had no money, Defendant Graves grabbed the arm of the 14-year-old girl. The dog jumped out of the daughter's arms, and at that point one of the robbers shot the dog.

The victim would testify that it was Tony Graves that grabbed her by the arm, and it was the other co-defendant that shot the dog.

Throughout the encounter, Maria Coral told the robbers she did not have any money to give them. Defendant Graves took the 14-year-old girl, dragged her down the stairs and out of the house and into a car, where they drove off. And in the car were Donald Gresham and Christopher Atkins and another man that was the driver that we have not been able to identify to this date.

Defendant Graves stayed with the victim for almost the entire thirty-six hours that she was held. He conspired with Co-defendant Jackson to make ransom calls to the family.

8

Numerous ransom calls were made to the victim's family demanding money and describing that the mother's boyfriend had given the defendant's fake dope and that he owed them money.

Defendant Jackson – Co-defendant Jackson made reference during these calls to Juan and the mother's boyfriend, saying, He knows what we want, give us what we want and we will give you what you want.  Four of those calls were recorded, and they were all – the calls were received by the victim's aunt, who spoke with the person making the ransom calls that we believe was Wildrego Jackson.  The victim was first taken to the apartment of Tanisha Sikes, who is the girlfriend of Jackson. Later Defendant Graves had his girlfriend, Nicole Thrasher, come pick him up and the girl, and they went to Graves' relative's house where Graves kept her there overnight. The victim would testify that during the entire time that she was held, that Mr. Graves had his gun on display.

Once the kidnappers made a decision that they were not going to get any of the money that they were demanding, they decided to let the victim go unharmed.

The victim would testify that Nicole Thrasher, who is the Defendant Graves' girlfriend, drove her to McDonald's and to Walmart to buy new pajamas. The government would be able to prove that Ms. Thrasher went into a Walmart and bought a pair of pajama pants that the victim was wearing when she was recovered.

This all occurred on September 18th, later in the day, and the kidnapping occurred in the morning hours of September 17th. The victim would testify that she was then dropped off by her aunt's house, and her aunt was the one that received the ransom calls.

Since the incident, Maria Coral has cooperated with investigators and has admitted that her boyfriend at the time, Juan Contreras Ramirez,

sometimes stayed in her home and was engaged in cocaine trafficking.

Another cooperating witness confirms that Juan Contreras Ramirez sold him drugs during that period. We would also hear from other people that Juan Contreras was in the illegal drug trade, including cocaine and marijuana.

The government has additional evidence that we would ask the Court to allow us to present as inextricably intertwined or as 404 (b) during the course of the trial. We would be able to prove that the defendant was involved in a prior robbery at the same residence and of Maria Coral just a few weeks before by Defendant Graves and his co-defendants where they got a large amount of cash and split it between them.

All of this occurred in the Northern District of Georgia.

(Doc. 230 at 39-42). Next, an exchange between the Court and Movant occurred, whereby Movant denied certain details the AUSA had described; however, Movant admitted to the elements of the crime, that he knew he was committing a crime, and that he knew it was wrong to agree with other people to rob someone and/or take a young child. (Doc. 230 at 42-46). Movant admitted that he was, in fact, guilty of Count Four of the indictment, and that he thought it was in his best interest to enter a guilty plea to that charge. (*Id.* at 46-47). Judge Duffey made the following findings regarding the guilty plea:

At this time I find that Mr. Graves does understand the charge and the consequences of pleading guilty to it.

I have had a chance to interact with him here this afternoon and observe him. He's in my view not under the influence of any substance or disability that affects his judgment or his understanding of what we are doing here this afternoon.

I find that his offer to plead guilty to Count Four of the indictment does have a factual basis and that it hasn't been coerced in any way.

And I find that he is voluntarily offering to plead guilty to Count Four fully understanding the charge and the consequences of pleading guilty to it.

I find that Mr. Graves is competent to understand these proceedings and is competent to enter a knowing and voluntary plea of guilty.

I find that no promises of any kind have been made to him except the ones that are in the plea agreement that we have talked about today.

(*Id.* at 49-50).

Movant has provided no allegations whatsoever to overcome the strong presumption of the veracity of his sworn statements during the plea hearing upon which the Court's findings were based. *See United States v. Palacios*, 516 F. App'x 734, 737 (11th Cir. 2013) (finding that the movant did not overcome the presumption of truth during the plea colloquy where after the fact he claimed that he did not have the requisite knowledge for money laundering, because during the plea colloquy he did not object to the government's proffer and explicitly stated

that the conduct and knowledge ascribed to him were accurate); *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (noting that testimony at a plea allocution "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made."); *United States v. Farah*, Criminal No. 11-87 (MJD/JJK), Civil No. 13-730 (MJD), 2013 WL 4519345, at *3 (D. Minn. Aug. 26, 2013) ("Petitioner's belated and barebones claim that she did not commit the crimes to which she pled guilty is insufficient to overcome the strong presumption of truth of her prior statements made during the guilty plea hearing."). Moreover, during sentencing, Movant expressed concern several times for the victim's well-being [Doc. 255 at 29-30, 40], at both the plea and sentencing proceedings, Movant apologized to several people – the AUSA and the Court, because "the process, it took so long" [Doc. 230 at 48-49], the victim's family, for "the torment they went through" [Doc. 255 at 49], and his own family, for "the embarrassment that I put them through day to day" [Doc. 255 at 49] – his contrition and concern indicating that he would not have wanted to further "torment" or "embarrass" the victim, her

12

family, and his family by putting them through a trial.  Accordingly, Movant has

not demonstrated that his plea was anything other than knowing and voluntary.

     B.    <u>Movant's *Johnson* Claim Is Barred By The Valid And Enforceable Appellate Waiver.</u>

Because Movant knowingly and voluntarily entered into the plea agreement

which contained the appellate waiver, that appellate waiver is valid and

enforceable.  *See Demello v. United States*, 623 F. App'x 969, 971 (11th Cir.

2015); *United States v. Wilson*, 445 F. App'x 203, 207 (11th Cir. 2011); *United*

*States v. Ramos*, 433 F. App'x 893, 895 (11th Cir. 2011); *Williams v. United*

*States*, 396 F.3d 1340, 1342 (11th Cir. 2005); *United States v. Bushert*, 997 F.2d

1343, 1350 (11th Cir. 1993).  "[O]ne of the keys to enforcing a sentence appeal

waiver is that the defendant knew he had a 'right to appeal his sentence and that

he was giving up that right.'" *Bushert*, 997 F.2d at 1350 (citations omitted).  In

order to prevail in an argument to enforce a waiver, the Government must show

that either "(1) 'the district court questioned the [movant]' about the waiver; or (2)

the record makes clear 'that the [movant] otherwise understood the full

significance of the waiver.'" *Wilson*, 445 F. App'x at 207 (quoting *Bushert*, 997

F.2d at 1351); *Ramos*, 433 F. App'x at 895-96; *United States v. Johnson*, 541 F.3d

1064, 1066 (11th Cir. 2008).  In this case, the Government has demonstrated both.

The appellate waiver in the plea agreement provides as follows:

### Limited Waiver of Appeal

> LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or variance above the sentencing guideline range as calculated by the district court.  The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

(Doc. 223, Attach. 1 at 9-10, ¶ 23).  The Court specifically questioned Movant about the appellate waiver, asking him if he understood that he was giving up his right to appeal, and Movant stated that he understood.  (Doc. 230 at 33-35).[3]  It is therefore clear from the record that Movant understood the significance of the plain language of the appellate waiver, and Movant does not challenge that understanding.  Consequently, Movant's appellate waiver is valid and enforceable.

---

[3] The Court explicitly asked Movant "What you have said in that [sic] is that you are never going to challenge your convictions through either of those two processes[an appeal or collateral proceeding][,]" to which Movant replied, "Yes, sir." (Doc. 230 at 34).

*See United States v. Steele*, 168 F. App'x 897, 900 (11th Cir. 2006) (finding appellate waiver valid where the court specifically questioned the movant about the waiver provision); *United States v. Montes*, 151 F. App'x 846, 853 (11th Cir. 2005) (finding appellate waiver valid where judge reviewed the waiver with the movant and he agreed that he was freely and voluntarily waiving his right to appeal his sentence); *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005) (finding appellate waiver enforceable where the court expressly questioned movant about the specifics of the waiver and determined that he had entered into the written plea agreement, which included the waiver, freely and voluntarily, and where "[t]he plain language of the agreement informed [the movant] othat he was waiving a collateral attack on his sentence."). *See also United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008) (stating that a waiver is valid if the Government shows that either: "(1) the district court specifically questioned the [movant] about the waiver; or (2) the record makes clear that the [movant] otherwise understood the full significance of the waiver."). Because Movant's *Johnson* claim does not involve any of the exceptions contained in the waiver, Movant is barred from raising it.

C.    Movant's Sentence Is Not Encompassed Within The *Johnson* Decision.

Importantly, Movant was not sentenced under 18 U.S.C. § 924(e), which was invalidated by *Johnson*. Movant argues, however, that the definition of "crime of violence" contained in U.S.S.G. § 4B1.2 and applied to U.S.S.G. § 4B1.1 also should be deemed unconstitutionally vague after the Supreme Court's decision in *Johnson*.[4]  (Doc. 272, Attach. 1 at 2).

U.S.S.G. § 4B1.1 provides that a defendant is a career offender if he was at least 18 years old at the time the crime was committed, the instant conviction is a felony that is a crime of violence or a controlled substance offense, and he has at least two prior felony convictions of either a crime of violence or a controlled substance offense.  Similar to the residual clause language held unconstitutional in *Johnson*, U.S.S.G. § 4B1.2 defines a "crime of violence" as, *inter alia*, a felony that "has an element the use, attempted use, or threatened use of physical force against the person of another[.]"  U.S.S.G. § 4B1.2(a)(2).  The Eleventh Circuit,

---

[4] To the degree that Movant argues that his conviction for conspiracy to commit Hobbs Act robbery is not a crime of violence under the residual clause contained in 18 U.S.C. § 924(c), the charge of brandishing and discharging a firearm in violation of 18 U.S.C. § 924(c) was dismissed as part of the plea bargain and Movant also was not sentenced under that provision.

however, has held that *Johnson*'s ruling does not extend to the advisory sentencing guidelines, including § 4B1.2(a)(2). *United States v. Matchett*, 802 F.3d 1185, 1193-96 (11th Cir. 2015)("By its terms, the decision of the Supreme Court in *Johnson* is limited to criminal statutes that define elements of a crime or fix punishments. . . . The [ACCA] defines a crime and fixes a sentence, but the advisory guidelines do neither.").   But the Supreme Court recently granted certiorari to specifically determine whether *Johnson* does, in fact, render void the residual clause in U.S.S.G. § 4B1.2. *See Beckles v. United States*, __ U.S. __, 136 S. Ct. 2510 (2016).   Regardless, this argument makes no difference in Movant's case because Movant's sentence was not impacted by the career offender enhancement provision contained in the Sentencing Guidelines.

Indeed, based on U.S.S.G. § 2B3.1, Movant's base offense level for conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 was 20.[5] (*See* Doc. 248 at 9).   The offense level was increased by seven (7) because a firearm was discharged [U.S.S.G. § 2B3.1(b)(2)(A)]; by four (4) because a minor was kidnapped to facilitate the commission of the offense [U.S.S.G.

---

[5] U.S.S.G. § 2B3.1(a) provides for a base offense level of 20 for robbery. Under U.S.S.G. § 2B3.2, specific characteristics of the offense can increase that base level depending on the characteristic.

§ 2B3.1(b)(4)(A)], and by three (3) for his role in the offense [U.S.S.G. § 3B1.1], and the offense level was decreased by three (3) levels for his acceptance of responsibility [U.S.S.G. §§ 3E1.1(a) and (b)], for a total offense level of 31. (*See* Doc. 255). With Movant's criminal history as a category VI [*see* Presentence Report ("PSR") at 13-22], Movant's guideline range was 188 to 235 months. (Doc. 255 at 39); *see also* U.S.S.C. Chapter 5, Part A (sentencing table). After Movant and the Government presented evidence of mitigating and extenuating evidence respectively, the Court sentenced Movant to 228 months [Doc. 255 at 40-55], which is less than the statutory maximum of 240 months. *See* 18 U.S.C. § 1951(a).

Importantly, the career offender enhancement in U.S.S.G. § 4B1.1(b) provides that "if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. A career offender's criminal history category in every case under this subsection shall be Category VI." Here, because the statutory maximum is twenty (20) years, under the career offender table contained in U.S.S.G. § 4B1.1(b), Movant's offense level would have been 32, reduced to 29 after the three-level adjustment for acceptance of responsibility, *see*

U.S.S.G. § 4B1.1(b) & n.*, which is less than the "otherwise applicable" calculated adjusted offense level of 31; therefore, the offense level contained in the career offender table in U.S.S.G. § 4B1.1 did not apply even though the PSR concluded that Movant was a career offender. *See id.* And Movant's criminal history category already was a Category VI without applying the career offender enhancement. In other words, the length of Movant's sentence was based on calculations entirely independent from his status as a career offender under 4B1.1(b); therefore, even if Movant is correct that he should not have been considered a career offender, any such error was harmless. *See Williams v. United States*, 503 U.S. 193, 1120-21 (1992) (defining harmless error as when "the error did not affect the district court's selection of the sentence imposed"); *United States v. Foley*, 508 F.3d 627, 634 (11th Cir. 2007) (holding that errors are harmless if they do not substantially affect the sentence imposed); *United States v. Barnett*, __ F. App'x __, 2016 WL 5930256, at *8 (4th Cir. Oct. 12, 2016) (holding that the movant's designation as a career offender was harmless error because he was placed in category VI for his criminal history – the same category that he would have been assigned absent the career offender designation – and the offense level he was assigned was greater than the level prescribed in the career offender

19

guideline; therefore, the career offender designation did not affect his sentence). *Cf. United States v. Porter*, 594 F. App'x 585, 590 (11th Cir. 2014) (affirming the movant's sentence and holding that even if a six-level enhancement for use of a firearm was improperly applied, the error was harmless because it did not affect the movant's ultimate guideline range or sentence).  It necessarily follows that even if the Supreme Court were to decide that *Johnson* extends to the career offender designation in U.S.S.G. §§ 4B1.1 and 4B1.2 of the Sentencing Guidelines, any error in designating Movant as a career offender was harmless since his sentence would have been the same without that designation. Accordingly, this ground for relief is without merit.

    D.    <u>Movant Did Not Receive Ineffective Assistance Of Counsel.</u>

        1.    <u>The Appellate Waiver Bars Movant's Ineffective Assistance Claims.</u>

As discussed previously herein in Section II.A., although the appellate waiver in Movant's plea agreement precludes both direct and collateral review of his sentence and conviction, an appellate waiver does not bar claims for ineffective assistance of counsel relating to the plea agreement.  In Movant's two ineffective assistance claims, he argues that counsel was ineffective for failing to challenge:

20

(1) the Court's use of a preponderance of the evidence standard at sentencing; and (2) that two of Movant's prior convictions were imposed on the same day and should not have been treated as separate convictions in calculating his criminal history category because they were consolidated.  Neither of these issues involves claims of ineffective assistance of counsel related to the plea agreement; therefore, the appellate waiver prohibits Movant from raising these claims.  *See Demello v. United States*, 623 F. App'x 969, 972 (11th Cir. 2015) ("When a valid sentence-appeal waiver is entered into knowingly and voluntarily and contains express language waiving the right to collateral review, it is enforceable and precludes the defendant from collateral attacking a sentence on the basis of ineffective assistance of counsel.") (citing *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005)).  Even if these ineffective assistance claims were not barred under the waiver, they are without merit.[6]

_____

[6] The Government only implies in passing (in a footnote) that the ineffective assistance claims fail because they relate to sentencing and do not challenge the knowing and voluntary nature of the plea, without reference to the appellate waiver.  (*See* Doc. 283 at 16 n.2).  Even though the undersigned finds that Movant's ineffective assistance of counsel claims are barred by the appellate waiver, out of an abundance of caution the undersigned alternatively will analyze these claims on the merits.  Either way, Movant's ineffective assistance claims fail.

2.   Ineffective Assistance of Counsel Standard

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components:  A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687). To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688)). To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010). The court may "dispose of [the] ineffectiveness [claim] on either of its two grounds." *Atkins v. Singletary*, 965 F. 2d 952, 959 (11th Cir. 1992); *see Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Strickland*'s two-pronged test applies to counsel's representation of a defendant in connection with a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). The Movant must show that his "counsel's constitutionally ineffective performance affected the outcome of the plea process," *Id.* at 59, by "convinc[ing] the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). *See also Jackson v. United States*, 463 F. App'x 833, 835 (11th Cir. 2012) ("If [the movant] cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail."). "[A] petitioner's bare allegation that he would not have pleaded guilty is insufficient to establish prejudice under *Strickland*." *Roach v. Roberts*, 373 F. App'x 983, 985 (11th Cir. 2010) (per curiam) (citation omitted).

3.   Grounds Two And Three

In Ground Two, Movant argues that sentencing and appellate counsel were ineffective for failing to object to the Court's use of a preponderance of the evidence standard in violation of *Alleyne v. United States*, __U.S. __, 133 S. Ct. 2151 (2013),  which held that any fact that increases the mandatory minimum sentence for a crime is considered an element of the crime, not a sentencing factor, that must be submitted to the jury.  *Alleyne*, 133 S. Ct. at 2158.  Movant argues in Ground Three that counsel should have challenged the PSR's criminal history determination – specifically, that  prior convictions that had been consolidated should not have been considered separately in determining his criminal history category.

a.   Ground Two

As set forth herein in Section II.C.3., in *Alleyne* the Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury."  *Alleyne*, 133 S. Ct. at 2155.  In *Alleyne*, however, "[t]he Court cautioned that its holding did not disturb judicial fact-finding at sentencing for facts that do not impact the statutory punishment."  *United States v. Rivera*, 558 F. App'x 971, 976 (11th Cir. 2014).  Thus, the rule in *Alleyne* does not apply to

24

judicial fact-finding where, as here, those facts only increase the Sentencing Guidelines range. *See Rivera*, 558 F. App'x at 976 ("Because the enhancement only affected her Sentencing Guidelines range, not her statutory mandatory minimum or maximum, her reliance on *Alleyne* is misplaced."); *United States v. Cassius*, 777 F.3d 1093, (10th Cir. 2015) (affirming district court's use of its own drug quantity rather than the jury's drug quantity finding in reaching the defendant's sentence, where there was nothing in the record indicating that the court increased the statutory sentencing range so as to violate *Alleyne*; rather, the court only used the larger drug quantity calculation solely as a sentencing factor to help determine the defendant's sentence within the prescribed sentencing range); *United States v. Ramirez-Negron*, 751 F.3d 42, 48 (1st Cir. 2014) ("[F]actual findings made for purposes of applying the Guidelines, which influence the sentencing judge's discretion in imposing an advisory Guidelines sentence and do not result in imposition of a mandatory minimum sentence, do not violate the rule in *Alleyne*."); *United States v. Hailey*, 563 F. App'x 229, 231 (4th Cir. 2014) (rejecting the movant's argument that *Alleyne* precludes the district court from making factual findings as relevant to sentencing enhancements as there was "no support for this proposition"); *United States v. Ibrahim*, 529 F. App'x 59, 64 (2d

Cir. 2013) (citing to *Alleyne* and finding that "[b]ecause the Sentencing Guidelines are advisory rather than mandatory . . . application of guidelines enhancements that do not increase the statutory maximum or minimum penalty neither implicates nor violates a defendant's Sixth Amendment right to a jury trial.").

Here, Movant entered a plea to conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), which has no mandatory minimum, and the maximum penalty is twenty (20) years.  Because there is no mandatory minimum, and because Movant's 228 month sentence is twelve months below the 240 month maximum penalty, *Alleyne* is not applicable.  Thus, any failure by plea or appellate counsel to raise this issue did not constitute ineffective assistance.  *See Capshaw v. United States*, 618 F. App'x 618, 622 (11th Cir. 2015) (finding counsel was not ineffective for failing to raise a meritless claim); *Harrison v. United States*, 577 F. App'x 911, 915 (11th Cir. 2014) ("In short, the failure of Harrison's appellate counsel to raise these meritless issues on appeal cannot have constituted ineffective assistance."); *accord Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989); *Mylar v. State of Ala.*, 671 F.2d 299, 1301 (11th Cir. 1982).

Moreover, contrary to Movant's argument, the Court's use of the preponderance of the evidence standard to make findings of fact at Movant's

sentencing hearing is, in fact, the correct standard. *See United States v. Watts*, 519 U.S. 148, 157 (1997) ("We . . . hold that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, *so long as that conduct has been proved by a preponderance of the evidence*.") (emphasis added); *Crayton v. United States*, 799 F.3d 623, 625 (7th Cir. 2015) ("It is lawful today for a judge to increase a sentence based on facts found on the preponderance of the evidence standard."); *United States v. Pritchett*, 749 F.3d 417, 433 (6th Cir. 2015) ("So long as the sentence falls within the statutory range prescribed for the . . . conviction, a district court may sentence a defendant based on acquitted conduct because the standard of proof at sentencing is the lower preponderance of the evidence standard."); *United States v. Gomes*, 605 F. App'x 147, 149 (4th Cir. 2015) ("It is well established that '[s]entencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as th[e] Guidelines sentence is treated as advisory and falls within the statutory maximum' . . . Contrary to [the movant's] contentions, this rule did not change after the Supreme Court's decision in *Alleyne*[.] . . . "). Because these arguments lack merit, neither plea nor appellate counsel could have been ineffective for failing to raise them. *See Capshaw*, 618

F. App'x at 622; *Harrison*, 577 F. App'x at 915; *accord Ladd*, 864 F.2d at 110; *Mylar*, 671 F.2d at 1301.

b.    Ground Three

Movant argues in Ground Three that counsel should have challenged the PSR's criminal history calculation because two of his convictions that had been consolidated were considered separately in determining that calculation.  Before reviewing this claim, the record is clear that plea counsel successfully: (1) reached a plea agreement where the *maximum* time of imprisonment was 240 months, whereas had he proceeded to trial, two of the four counts with which he was charged contained a statutory *minimum* of 240 months;[7] (2) challenged the PSR's one-level enhancement based on the alleged objective of the robbery as taking a controlled substance; and (3) convinced the Court to reduce the upward adjustment for Movant's role in the offense from four levels to three levels.  (*See generally* PSR; Doc. 255).

---

[7] The Government states that two of the charges that were dismissed against Movant as part of the plea agreement contained a statutory minimum term of 360 months. (Doc. 283 at 16).  It is not clear where the Government found that mandatory minimum, as the statutory minimum for kidnapping and conspiracy to kidnap a minor is 240 months, or 20 years.  *See* 18 U.S.C. §§ 1201(a)(g) (providing that the statutory minimum for kidnapping a minor shall be not less than 20 years).

Movant does not specify which of his prior convictions he claims should have been considered as one conviction in calculating his criminal history [*See* Doc. 1], and Movant's underlying challenge appears to be related to his argument that this error improperly caused him to be considered a career offender under U.S.S.G. § 4B1.1. *See* Doc. 272, Att. 1 at 9 (citing to *United States v. Davis*, 720 F.3d 216 (4th Cir. 2013), in which the Fourth Circuit reversed a conviction because the district court considered a consolidated sentence as two qualifying convictions for the career offender enhancement). Because movant was not sentenced under the career offender enhancement [*see* Section III.C., *supra.*], and because Movant does not specify which convictions he claims should not have been considered separately, Movant has failed to demonstrate that counsel was ineffective for failing to raise this issue or that the outcome would have been different had he done so. Accordingly, Movant is not entitled to relief in connection with Ground Three.   IV.   <u>Conclusion</u>

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Movant Tony Maurice Graves's motion to vacate sentence [Doc. 272] be **DENIED**.

V.   Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the § 2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*

*v. McDaniel*, 529 U.S. 473, 484 (2000).  Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determinations that Movant's appellate waiver bars the instant § 2255 motion, that his sentencing claim otherwise is not encompassed within the *Johnson* decision, and/or that he did not receive ineffective assistance of counsel.  *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 12th day of January, 2017.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE